UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ST. ANN,

       Petitioner,

                                  CASE NO. 2:13-CV-11720

v.                                 JUDGE PATRICK J. DUGGAN
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

LLOYD RAPELJE,

       Respondent.

_____/

# REPORT AND RECOMMENDATION

| | | | | |
|---|---|---|---|---|
| I. | | RECOMMENDATION | | 2 |
| II. | | REPORT | | 2 |
| | A. | *Procedural History* | | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* | | 5 |
| | C. | *Procedural Default* | | 8 |
| | D. | *Standard of Review* | | 10 |
| | E. | *Jurisdiction/Probable Cause (Claim I)* | | 13 |
| | F. | *Sufficiency of the Evidence (Claims II & V)* | | 15 |
| | | 1. | *Clearly Established Law* | 16 |
| | | 2. | *Analysis* | 17 |
| | G. | *Jury Issues (Claims III & V)* | | 21 |
| | | 1. | *Instructional Error* | 21 |
| | | | a. Legal Standard | 21 |
| | | | b. Analysis | 22 |
| | | 2. | *Polling of the Jury* | 24 |
| | H. | *Prosecutorial Misconduct (Claims IV & V)* | | 24 |
| | | 1. | *Perjured Testimony* | 25 |
| | | | a. Legal Standard | 25 |
| | | | b. Analysis | 27 |
| | | 2. | *Prejudicial Comments and Evidence* | 28 |
| | | | a. Legal Standard | 28 |
| | | | b. Analysis | 29 |
| | I. | *Evidentiary Rulings (Claim V)* | | 30 |
| | J. | *Biased Judge (Claim V)* | | 32 |
| | K. | *Ineffective Assistance of Counsel (Claim VI)* | | 34 |
| | | 1. | *Clearly Established Law* | 34 |
| | | 2. | *Analysis* | 36 |
| | | | a. Trial Counsel | 36 |
| | | | b. Appellate Counsel | 38 |
| | L. | *Recommendation Regarding Certificate of Appealability* | | 40 |
| | | 1. | *Legal Standard* | 40 |
| | | 2. | *Analysis* | 42 |
| | M. | *Conclusion* | | 43 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS | | 43 |

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner David St. Ann is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2.     On August 20, 2009, petitioner was convicted of first degree premeditated murder, MICH. COMP. LAWS § 750.316; four counts of uttering and publishing, MICH. COMP. LAWS § 750.249; making a false application for state identification, MICH. COMP. LAWS § 28.293; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On September 16, 2009, he was sentenced to a mandatory term of life imprisonment without parole on the murder conviction, concurrent terms of 2-14 years' imprisonment for each uttering and publishing conviction, a concurrent term of 1-5 years' imprisonment on the false identification conviction, and a mandatory consecutive term of 2 years' imprisonment on the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.     DEFENDANT-APPELLANT IS ENTITLED TO DISMISSAL OF THE CHARGES WHERE THE TRIAL COURT ERRED IN REINSTATING THE CHARGES THAT WERE DISMISSED AT THE PRELIMINARY EXAMINATION.
>
> II.    DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE CONVICTIONS OF FIRST DEGREE PREMEDITATED MURDER AND FELONY FIREARM. ALTERNATIVELY, THE MOTION FOR DIRECTED VERDICT SHOULD HAVE BEEN GRANTED.

2

III.   DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE ADMISSION OF EVIDENCE IN VIOLATION OF MRE 404(B).

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. St. Ann*, No. 294569, 2010 WL 44854910 (Mich. Ct. App. Nov. 9, 2010) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. St. Ann*, 489 Mich. 898, 796 N.W.2d 84 (2011).

5.     On December 27, 2011, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

A.   THE PROSECUTOR'S MISCONDUCT BY REFUSING TO REFRAIN FROM PROSECUTING CHARGES THAT HE KNEW WAS NOT SUPPORTED BY PROBABLE CAUSE IS PREJUDICIAL.

B.   THERE WAS PROSECUTORIAL MISCONDUCT WHERE THE PROSECUTOR TOLD WITNESSES WHAT TO TESTIFY TO.

C.   THERE WAS PROSECUTORIAL MISCONDUCT WHERE THE USE OF THE PHRASE "SCHEME" IN CLOSING ARGUMENT CREATED AN AMBIGUITY.

D.   THE INEFFECTIVENESS OF APPELLATE AND TRIAL COUNSEL FOR FAILING TO RAISE THE PREJUDICIAL EFFECTS THAT THE CUMULATIVE ACTIONS OF THE PROSECUTOR ON THE FAIRNESS OF THE TRIAL.

E.   THE TRIAL JUDGE SANCTIONED THE PROSECUTOR'S MISINTERPRETATION OF THE LAW AS IT APPLIED AND USED A FRAUDULENT LAW WHICH WAS AN ABUSE OF DISCRETION.

F.   THERE WERE INSTRUCTIONAL JURY FLAWS GIVEN TO THE JURORS ON WHAT THE LAW CONSTITUTES AS AN ELEMENT OF GUILTY PROOF.

G.     INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO
       OBJECT TO JURY INSTRUCTIONS AFTER FAILING TO MAKE AN
       OPENING STATEMENT PRESENTING MR. ST. ANN'S ACTUAL
       INNOCENCE.

H.     INEFFECTIVE ASSISTANCE OF DEFENSE COUNSELOR FOR
       FAILING TO FILE INTERLOCUTORY APPEAL WHICH CAUSED HIS
       ONLY CLAIM OF A DEFENSE OF LACK OF PROBABLE CAUSE TO
       BE IMPROPERLY PRESERVED.

I.      INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR NOT
       OBTAINING ORAL ARGUMENT TO PROPERLY HAVE THE MERITS
       OF HIS PROBABLE CAUSE ISSUE ADDRESSED.

On June 12, 2012, the trial court denied petitioner's motion for relief from judgment, concluding that petitioner's ineffective assistance of counsel claims were without merit, and that the remaining claims were barred by MICH. CT. R. 6.508(D)(3) because petitioner failed to raise them on direct appeal. *See People v. St. Ann*, No. 09-10620-01 (Wayne County, Mich., Cir. Ct. June 12, 2012) [hereinafter "Trial Ct. op."]. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. St. Ann*, 495 Mich. 899, 839 N.W.2d 460 (2013); *People v. St. Ann*, No. 312465 (Mich. Ct. App. May 7, 2013).

6.     While his motion for relief from judgment was pending in the state courts petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 16, 2013. As grounds for the writ of habeas corpus, he raises the following claims:

I.      PETITIONER IS BEING HELD IN VIOLATION OF THE
       CONSTITUTIONAL RIGHT TO DUE PROCESS AND IS ENTITLED TO
       HABEAS RELIEF WHERE THE TRIAL COURT REINSTATED
       WITHOUT AN ARRAIGNMENT, THE CHARGES OF FIRST DEGREE
       PREMEDITATED MURDER AND FELONY FIREARM, AFTER THESE
       CHARGES WERE DISMISSED PRIOR TO THE BIND OVER.

II.     PETITIONER IS ENTITLED TO HABEAS RELIEF WHERE HE IS
       BEING HELD IN VIOLATION OF THE CONSTITUTION, AFTER HIS
       CONVICTIONS FOR FIRST DEGREE MURDER AND FELONY
       FIREARM WERE OBTAINED WITHOUT SUFFICIENT EVIDENCE.

4

III.   PETITIONER IS ENTITLED TO HABEAS RELIEF WHERE HE WAS
DENIED HIS [RIGHT] TO A FAIR TRIAL FROM THE TRIAL COURT'S
ERRONEOUS JURY INSTRUCTIONS.

IV.   PETITIONER IS ENTITLED TO HABEAS RELIEF WHERE THE
PROSECUTOR'S ACTIONS DEPRIVED HIM OF A FAIR TRIAL.

V.   THE TRIAL COURT'S ABUSE OF DISCRETION DENIED PETITIONER
A FAIR TRIAL AND HIS DUE PROCESS RIGHTS BY: ERRING IN HIS
EVIDENTIARY RULINGS, SHOWING OF PARTIALITY, DENYING
MOTION NOTWITHSTANDING THE VERDICT, ERRONEOUS JURY
INSTRUCTIONS, FAILING TO CONTROL THE PROSECUTING
ATTORNEY, SEEING THAT PETITIONER HAD A FAIR TRIAL, AND
INACCURATELY POLLING OF THE JURY.  US CONST AMS V, VI,
XIV.

VI.   PETITIONER IS ENTITLED TO HABEAS RELIEF AND IMMEDIATE
RELEASE WHERE HE[] RECEIVED INEFFECTIVE ASSISTANCE OF
TRIAL AND APPELLATE COUNSEL.

7.    Respondent filed his initial answer on October 23, 2013, contending that petitioner's

third through sixth claims were unexhausted, and that all of the claims are without merit.  On

February 19, 2014, respondent filed a supplemental answer withdrawing his exhaustion argument

in light of the conclusion of state court proceedings on petitioner's motion for relief from judgment.

He now contends that petitioner's third through sixth claims are procedurally defaulted, and that all

of the claims are without merit.

8.    Petitioner filed a reply to respondent's initial answer on December 6, 2013, and a

reply to respondent's supplemental answer on April 17, 2014.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the shooting death of Gary Jones on March 25, 2007, in

the City of Detroit.  The evidence adduced at trial was accurately summarized by the Michigan

Court of Appeals:

This case arises from the March 25, 2007, death of Gary Jones in the city of

5

Detroit. At three a.m. on that date, Detroit Police Officers Peter Padron and Eric Smith responded to a 911 call and found Jones' body lying on the street with six gunshot wounds. Defendant and Jones were believed to be long-time friends. However, family members last saw Jones alive leaving his home with defendant in a red Cadillac shortly before three a.m.

The prosecution presented additional evidence to connect defendant to Jones' death. In general, the prosecution presented a narrative in which defendant and Jones attempted to commit insurance fraud, but defendant surreptitiously changed the beneficiary to someone whose identity he could exploit to collect the proceeds after killing Jones. Specifically, the prosecution presented evidence relating to two $250,000 life insurance policies on Jones. Jones, 24 years old and single, acquired one of these policies (Northwestern Mutual) in person through an agent on September 23, 2005. Jones listed his address as 18510 St. Aubin, which was not Jones' home. The second policy (Jefferson National) was not issued to Jones in person, but likely over the phone also in September 2005. Jones' address was again listed at 18510 St. Aubin. Both policies initially listed Jones' mother as the beneficiary.

To connect defendant with the insurance policies, the prosecution presented evidence that police, on August 31, 2005, had responded to a call at 18510 St. Aubin. There, police identified defendant as a trespasser at that address. Police ordered him to remove personal items from the house. Also, the telephone number defendant provided to the police officers was the contact number Jones listed on the Northwestern Mutual policy. The cell phone number was registered to defendant.

The prosecution presented evidence that Northwestern Mutual received a change of beneficiary form on July 4, 2006 to remove Jones' mother as a beneficiary and add Steven Henry, who was represented to be Jones' stepfather. Steven Henry's address was listed as 9023 Berkshire. Defendant has a Michigan identification card with a 9623 Berkshire address. The red Cadillac defendant drives is registered to Kaline Brown at the 9623 Berkshire address. The prosecution presented a Michigan identification card bearing Kaline Brown's name with a picture bearing the likeness of defendant. Jones' mother testified that she did not know she was ever a beneficiary and that she did not know Steven Henry. Notably, this change was not made in person. Shortly before Jones' death, Northern Mutual received another change of beneficiary form dated February 20, 2007 naming Willard Redding as a beneficiary, again represented as Jones' uncle. Jones' mother testified that Jones did not have an uncle named Willard Redding. Redding's address was listed at 5082 Buckingham. Defendant has a Michigan identification card with a 5082 Buckingham address. Near the same time, Jefferson National received another change of beneficiary form dated February 21, 2007 naming Willard Redding the beneficiary, who was represented to be Jones' uncle. Defendant signed the document as a witness to the amendment. The document also lists the address of 14810 Hazelridge below the witness signatures, which is the same address defendant provided to police on May 9, 2007 as a previous address.

After Jones' death, a caller identifying himself as Willard Redding informed Northwestern Mutual that Jones had died and provided contact information at PO

6

Box 15571. However, at trial, the prosecution presented Willard Redding, who notably had always referred to himself by his middle name, Michael. He testified that he had known defendant as "Cory" since around 2000 and they had attempted insurance "scams" together.[1] He also testified that he did not request proceeds from Northwestern Mutual and had no knowledge of life insurance for Jones until police informed him he was under suspicion of murder. He testified that five days after Jones' death defendant drove him to the post office and paid him $50 to open a post office box and give defendant the key. He testified that defendant later informed him that he had lost the post office box key. He testified that defendant drove him to the post [office] and he acquired another key but left his wallet in the car. Defendant returned the wallet a week later.

> [1]Although the record is unclear as to the date, Redding testified that defendant paid him $100 to help with an insurance scam and drove him to an insurance agency. There defendant paid $113 for a $25,000 life insurance policy for Redding in which defendant was named the beneficiary. Redding testified that two weeks later he cancelled the policy because he believed defendant was going to kill him.

After receiving the above phone call, Northwestern Mutual sent and received back a beneficiary claim statement. The listed mailing address was PO Box 15571 and the listed street address was 4855 Beaconsfield, which is the address defendant provided police on August 31, 2005 as a prior address. Jefferson National also received a completed death claim form indicating a mailing address at PO Box 15571.

Northwestern Mutual accepted the beneficiary claim statement and deposited $250,000 plus interests into an account at Mellon Bank. The access checks for Redding's account were sent to PO Box 15571 but apparently not received. Then, a request was made to send the draft checks to 18927 Westphelia. Defendant has a Michigan identification card with an 18927 Westphelia address.

The prosecution presented evidence that defendant negotiated checks under Redding's account. On July 14, 2007, he opened an account at J.P Morgan and deposited a $3,500 check allegedly signed by Willard Redding. Defendant opened the account listing an 18927 Westphelia address, which was the same address listed on Redding's check. Later, there was a $100 ATM withdrawal from this account and defendant withdrew $3,270 from the account in person. There was evidence that defendant opened a second account at J.P. Morgan with a $1,500 check. This account however was opened in the name of Kaline Brown, who was in prison at the time and notably owned the Cadillac in which defendant and Jones were last seen. The consumer address for the account was 5653 Beaconsfield. There was a later withdrawal of $1370 from the account. The prosecution presented the allegedly false Michigan identification card used by defendant to open the account and Kaline Brown's actual Michigan identification card. Defendant last opened an account at La Salle Bank in his own name using the 18927 Westphelia address. Defendant then deposited a $200,000 check. However, an unnamed insurance inspector learned that

Jones' mother had no knowledge of any insurance policies, and eventually Mellon Bank alerted Northwestern Mutual of potential fraud on Redding's account. Jones' mother also testified that after Jones died she stopped receiving mail and learned that her address had been changed.

The prosecution also presented evidence that defendant's statements to police were inconsistent with other witnesses' testimony offered at trial. In particular, defendant claimed he was at Jones' home at one a.m., which was inconsistent with two witnesses at trial that testified he was at Jones' home between two a.m. and three a.m. Defendant presented no case.

*St. Ann*, 2010 WL 4485910, at *1-*3.

C.    *Procedural Default*

Respondent contends that petitioner's third through sixth claims are barred by petitioner's procedural default in the state courts.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").  If a claim is procedurally defaulted, a habeas court may not review the claim unless the petitioner establishes cause for, and prejudice attributable, to the default, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Coleman*, 501

U.S. at 750.

Petitioner's third through sixth claims were first raised in petitioner's motion for relief from judgment. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal the trial court's denial of his second motion for relief from judgment in standard orders, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. St. Ann*, 495 Mich. 899, 839 N.W.2d 460 (2013); *People v. St. Ann*, No. 312465 (Mich. Ct. App. May 7, 2013). The Sixth Circuit has held that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Looking through to the trial court's order, respondent is correct that petitioner procedurally defaulted his third through fifth claims, but incorrect that petitioner defaulted his sixth claim alleging ineffective assistance of counsel. In denying petitioner's motion, the trial court invoked the procedural default rule set forth in MICH. CT. R. 6.508(D) with respect to all of petitioner's claims except for his ineffective assistance claims, concluding that "all of the issues presented for relief in this motion should have been raised in defendant's appeal of right, except for the allegations of ineffective assistance of counsel." Trial Ct. op., at 2. The trial court then reviewed the merits of petitioner's ineffective assistance claim, as both a substantive basis for relief and a basis for finding good cause for petitioner's failure to raise his other claims. *See id.* at 2-3. Thus, the Court should conclude that petitioner's third through fifth claims are defaulted, but that his sixth claim is not.

Notwithstanding petitioner's default of his third through fifth claims, it is still necessary to consider these claims on the merits. Petitioner may have his defaulted claims reviewed on the merits

if he is able to establish cause for, and prejudice attributable to, his default. *See Coleman*, 501 U.S. at 750; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). With respect to each claim petitioner raises, he contends that appellate counsel was ineffective. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification

11

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[1]

E.     *Jurisdiction/Probable Cause (Claim I)*

In his first claim, petitioner contends that there was no probable cause to bind him over, that the charges were improperly reinstated, and that the circuit court lacked jurisdiction over him.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is an "established rule that illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)).  Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein*, 420 U.S. at 119.  Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge his conviction on the basis of an alleged defect in the state court's preliminary procedures.  *See, e.g.*, *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995); *Biby v. Satran*, 619 F. Supp. 1563, 1567-68 (D.N.D. 1985).  Nor is petitioner entitled to relief based on his assertion that the trial court lacked jurisdiction over him.  It is well-established that habeas review does not extend to questions of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").

---

[1]As noted above, the trial court found that petitioner's third through fifth claims were procedurally defaulted, and thus the court did not adjudicate these claims on the merits.  Accordingly, I analyze these claims *de novo*, and not under the deferential standard set forth in § 2254(d)(1).

"A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001). As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917).

In any event, contrary to petitioner's argument the circuit court did not err in reinstating the murder and felony-firearm charges. Although the district court refused to bind petitioner over on these charges following the preliminary examination, the district court did bind petitioner over on the uttering and publishing charges. This vested jurisdiction in the circuit court. Once in the circuit court, the prosecutor moved to reinstate the murder and felony-firearm charges. Because petitioner had been bound over on some of the charges, the circuit court had both subject matter jurisdiction over the case and personal jurisdiction over petitioner. *See People v. Goecke*, 457 Mich. 442, 459, 579 N.W.2d 868, 876 (1998) ("The return having been filed, the circuit court had subject matter jurisdiction over the class of case and personal jurisdiction over the defendant."). Because an information may be amended by the prosecution at any time so long as the amendment does not unfairly surprise or prejudice the defendant, *see* MICH. COMP. LAWS § 767.76; MICH. CT. R. 6.112(G), "[j]urisdiction having vested in the circuit court, the only legal obstacle to amending the information to reinstitute an erroneously dismissed charge is that amendment would unduly prejudice the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to

defend." *Goecke*, 457 Mich. at 462, 579 N.W.2d at 877. Petitioner does not claim that reinstitution of the murder and felony-firearm charges unfairly surprised or prejudiced him, nor could he; "[w]here a preliminary examination is held on the very charge that the prosecution seeks to have reinstated, the defendant is not unfairly surprised or deprived of adequate notice or a sufficient opportunity to defend at trial[.]" *Id*. As explained below, the prosecution presented sufficient evidence to prove petitioner's guilt beyond a reasonable doubt, and it follows that the evidence was sufficient to meet the lesser standard of probable cause to support trial on the charges. Thus, even if this claim were otherwise cognizable, it is without merit. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his first claim.

F.     *Sufficiency of the Evidence (Claims II & V)*

In his second claim, petitioner contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on the murder and felony-firearm charges. As part of his fifth claim petitioner reasserts this argument, contending that the trial court erred in denying his motion for a directed verdict. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the

15

evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

16

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

　　　2.　　*Analysis*

　　　Petitioner does not contend that the prosecutor failed to prove any specific element of the murder or felony-firearm charges. Rather, petitioner contends that there was insufficient evidence to prove that he was the one who murdered Jones. The Michigan Court of Appeals rejected this claim, reasoning:

> Defendant argues that the evidence does not support his convictions for first-degree premeditated murder and felony-firearm because the jury speculated that defendant intended to kill Jones merely because defendant was with Jones shortly before police found Jones dead and because defendant profited from Jones' life insurance policy.
>
> The prosecution's case against defendant was entirely circumstantial and there was no eyewitness testimony presented at trial. However, circumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of the offense.
>
> We conclude there was more than sufficient circumstantial evidence presented for a rational jury to conclude beyond a reasonable doubt that defendant intentionally killed Jones. Defendant clearly had the opportunity to murder Jones. Evidence of opportunity is logically relevant in a prosecution for murder. There was evidence that Jones and defendant were last seen together in a Cadillac driven by defendant at 2:40 a.m. Police responded to a 911 call and discovered Jones' body at 3:00 a.m. Given that some distance had been traveled from Jones' home to where his body was discovered there is evidence to reasonably conclude that defendant had the opportunity to murder Jones.
>
> Further, there is overwhelming evidence that defendant had a remarkably strong motive to murder Jones. Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant. In cases in which the proofs are circumstantial, evidence of motive is particularly relevant. Evidence of insurance on the life of the deceased is admissible in a prosecution for murder as long as it can be established that the defendant was aware of the insurance policy before the killing took place.

17

Here, the jury did not need to speculate to conclude that defendant murdered Jones to collect life insurance proceeds. There was clear evidence that defendant knew of the life insurance policies. On appeal, he even admits to being "involved in an insurance fraud scheme which involved [Jones.]" Indeed, there is no dispute that defendant actually deposited some of the proceeds and signed as a witness to amend a change of beneficiary form. The prosecution presented a myriad of connections between defendant and the life insurance policies. These connections allow for a reasonable inference that defendant caused Redding to be beneficiary of each policy. Redding did not know Jones, but he did know defendant and even previously engaged in insurance fraud with defendant. Further, there was evidence that defendant convinced Redding to open a post office box in Reddings' name and give defendant the key. Defendant then used the Redding's post office as a mailing address for the two policies. He used Redding's post office to change the policy mailing address to a residence listed on one of his Michigan identification cards. From there, there is evidence that defendant forged Redding's signature and deposited insurance proceeds into his own accounts. Because there is evidence that defendant changed the beneficiaries before Jones' murder, there is evidence to conclude that defendant intended to murder Jones to collect Jones' life insurance proceeds.

*St. Ann*, 2010 WL 4485910, at *3-*4. This determination was reasonable.

Petitioner's principal argument is that there was no direct evidence, either physical or eyewitness, tying him to Jones's death. This fact does not render the evidence insufficient. "It is well-established that circumstantial evidence alone can be sufficient to support any burden of proof, even where, as in a matter of substantive criminal liability, the prosecution's proof must be beyond a reasonable doubt." *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994); *see also*, *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). "[C]ircumstantial evidence is intrinsically as probative as direct evidence even where the conviction rests solely upon circumstantial evidence." *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir. 1979) (citing *Holland v. United States*, 348 U.S. 121 (1954)). As the Supreme Court explained in *Holland*:

Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is

convinced beyond a reasonable doubt, we can require no more.

*Holland*, 348 U.S. at 140.  Likewise, the evidence is not rendered insufficient because there was no forensic evidence tying petitioner to the crime.  "Lack of physical evidence does not render the evidence that is presented insufficient."  *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also*, *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction.").

Here, there was significant circumstantial evidence pointing to petitioner's guilt.  Testimony was presented placing the victim and petitioner together, with no one else present, only 20 minutes prior to the discovery of the victim's body.  There was also significant evidence of petitioner's motive to kill Jones, namely to collect insurance proceeds on policies for which petitioner (through fraudulent identifications) claimed to be the beneficiary.  Further, there was evidence that petitioner gave false exculpatory statements to the police, demonstrating a consciousness of guilt.  This "evidence of motive, means, opportunity, and consciousness of guilt was sufficient to prove beyond a reasonable doubt that petitioner killed [Jones]."  *Mykolaitis v. Howes*, No. 2:10-CV-11903, 2011 WL 3624949, at *31 (June 28, 2011) (Komives, M.J.) (citing *Rothgeb v. United States*, 789 F.2d 647, 648-50 (8th Cir. 1986); *Mishall v. Warren*, No. 07-14080, 2009 WL 3818174, at *5-*6 (E.D. Mich. Nov.13, 2009) (Luddington, J.); *United States v. Schlesinger*, 372 F. Supp. 2d 711, 723–24 (E.D.N.Y. 2005), *aff'd*, 261 Fed. Appx. 355, 359 (2d Cir. 2008)), *magistrate judge's report adopted*, 2011 WL 3624946 (E.D. Mich. Aug. 16, 2011) (Steeh, J.); *see also*, *Flieger v. Delo*, 16 F.3d 878, 883-84 (8th Cir. 1992); *Jennings v. Grizzard*, 793 F. Supp. 681, 684 (W.D. Va. 1991).

Petitioner also contends that the witnesses used to establish the time-line (placing him with

19

the victim shortly before the body was discovered) were not credible. As explained above, however, witness credibility is solely the province of the trier of fact. A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, it was not physically impossible for the witnesses to have observed what they claimed to have observed, nor was their testimony contrary to the laws of nature. It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Moreover, the evidence is not rendered insufficient merely because petitioner can point to alternative explanations for the murder of Jones. It is well established that the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. This rule applies equally where the prosecution's case is based solely or principally on circumstantial evidence. *See United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011); *United States v. Ellerbee*, 73 F.3d 105, 107 & n.2 (6th Cir. 1996).

As noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the substantial testimony of petitioner's motive and opportunity, the verdict was not "so insupportable as to fall below the threshold of bare rationality."

*Coleman*, 132 S. Ct. at 2065.  It therefore follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

G.     *Jury Issues (Claims III & V)*

Petitioner next raises claims relating to the jury.  In his third claim, petitioner contends that the trial court gave instructions which improperly shifted the burden of proof.  Petitioner reiterates this claim in his fifth ground for relief, and raises an additional claim that there was a defect in the polling of the jurors.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Instructional Error*

*a.  Legal Standard*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state

21

law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

*b. Analysis*

Petitioner contends that the trial court shifted the burden of proof in its instruction regarding

the use of petitioner's statements to the police.  The court instructed the jury:

> Now, the prosecution has introduced evidence of a statement allegedly made by the evidence [sic].  You cannot consider such an out-of-court statement as evidence against the Defendant unless you do the following:
> First, you must find that the Defendant actually made the statement that was given to you.  If you find that the Defendant did not make the statement at all, you should not consider it.  If you find that he made part of the statement, you *may* consider that part as evidence.
> Second, if you find that the Defendant did make the statement, you must decide whether the whole statement or any part of it is true or false.  When you think about whether the statement is true or false, you consider how and when the statement was made as well as all the other evidence in the case.
> You *may* give that statement whatever importance you think it deserved.  You *may* decide it was very important or not very important at all.   In deciding this, you should, once again, think about how and when the statement was made and all the other evidence in the case.
> Now, an exculpatory statement is a statement made to deny guilt in the commission of a crime.  The object [sic] of that is an inculpatory statement where someone makes a statement and admits responsibility for something.  An exculpatory statement made to [a] law enforcement official and shown to be false is circumstantial evidence of a guilty conscience and is independent probative force or value.  Please use the following rules in analyzing the statement that the people allege was made by the Defendant.
> Was the statement made by the Defendant?  If it was made by the Defendant, is the statement true or false[?]
> If you conclude that the statement is true, it is fully *usable* for proof of the elements of the crime for any purpose, that is, on the issue of guilt or innocence.  However, if you find it is a false statement, it nevertheless *may* be evidence of guilty knowledge.  If you decide it is false and the statement relates to the elements of the crime, then such proof of a false exculpatory statement *can be used* as evidence that the Defendant committed the offense.  That is, such evidence *may* be used by to [sic] you on the issue of guilt or innocence.

Trial Tr., Vol. IV, at 68-70 (emphasis added).  Petitioner does not explain how this instruction

impermissibly shifted the burden of proof.  The instruction merely informs the jury what it must find

if it wanted to consider petitioner's statements as evidence of his guilt.  As the highlighted portions

of the instructions make clear, the instructions fully informed the jury that even if it concluded that petitioner made the statements and that they were false, it was up to the jury to determine what weight, if any, to assign this evidence. Nothing in this instruction shifted to petitioner the burden of proving or disproving anything relating to the statements themselves or the elements of the offense. Moreover, the trial court explained the presumption of innocence and the prosecutor's burden of proof, and reiterated multiple times that the prosecutor bore the burden of proving the elements of the offense. *See id*. at 59-60, 61, 70-71, 73-75, 77. In light of these instructions, petitioner cannot show that the court's instructions deprived him of a fair trial.

Petitioner also contends that the trial court impermissibly shifted the burden of proof by instructing the jury on the elements of the murder charge. The court instructed the jury that it must find beyond a reasonable doubt "[f]irst, that the Defendant caused the death of Gary Jones. That is, that Gary Jones died as a result of gunshot wounds fired by the Defendant." Trial Tr., Vol. IV, at 70. Petitioner contends that this instruction somehow directed the jury to find that he fired the gun that killed Jones. This is not a fair reading of the instruction. Rather, the court merely instructed the jury that, in order to find petitioner guilty, it first had to find beyond a reasonable doubt that petitioner was the one who fired the shots and caused the victim's death. There was no error in this instruction. Because the instructions did not improperly shift the burden of proof, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.   *Polling of the Jury*

Petitioner next contends that the polling of the jury shows that 13, rather than 12, jurors decided his case. This claim is without merit as a factual matter. The record reflects that the alternative jurors were excused prior to the jury retiring for deliberations. *See* Trial Tr., Vol. IV, at 86. When the jury returned to deliver its verdict, the court asked the lawyers to "note and agree that

23

all twelve jurors are in the courtroom," *id*. at 88, and the lawyers so acknowledged.  It is true that the court received thirteen responses in polling the jury, but this is because Juror No. 6 responded twice.  *See id*. at 92.  Thus, nothing in the record supports petitioner's assertion that 13 jurors deliberated in his case.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Prosecutorial Misconduct (Claims IV & V)*

        In his fourth claim, petitioner contends that the prosecutor committed misconduct by presenting perjured testimony to the jury and making improper comments.  In his fifth claim, petitioner relatedly contends that he was denied a fair trial because the trial judge failed to control the prosecutor.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Perjured Testimony*

                            *a.  Legal Standard*

        It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959).  This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id*. at 269.  To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material.  *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

        With respect to the first element, petitioner bears the burden of proving that the testimony

24

amounted to perjury.  As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured.  Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976).  As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'").  In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975).  The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL

25

521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.").

### b. Analysis

Here, petitioner has failed to show that any prosecution witness committed perjury, much less that the prosecutor knowingly presented any such perjured testimony. Petitioner contends that Ladedra Hill testified falsely that Jones left with petitioner at 2:30 a.m., because she testified at the preliminary examination that he left at 12:30 a.m. The preliminary examination transcript, however, does not support this assertion. At the preliminary examination, the prosecutor asked Hill, "when

was the last time you saw your brother, Gary Jones, alive?"  Preliminary Exam. Tr., at 8.  Hill responded, "March 25th of 2007 at about 12:30 a.m. – I mean, 2:30 a.m."  *Id*.  The prosecutor clarified the response, asking, "around 2:30 in the morning?", to which Hill responded, "yes."  It is clear, therefore, that Hill testified both at the preliminary examination and at trial that she last saw Jones at 2:30 a.m.  Petitioner also contends that Hill's testimony was inconsistent with that of Joshua Amerson, and that therefore one of them committed perjury.  He points out that each of them testified that it was he or she who opened the door when petitioner came to pick up Jones, and that Hill testified to statements made by Amerson which Amerson denied.  As explained above, however, mere inconsistencies in the testimony of the witnesses do not establish that either witness committed perjury.  *See Griley*, 814 F.2d at 971; *Verser*, 916 F.2d at 1271.  The witnesses may have merely perceived things differently or been honestly mistaken in their recollections.  This is particularly so give that the inconsistencies went to matters collateral to petitioner's guilt or innocence (such as which of the two actually opened the door).  Because petitioner has failed to establish that the witnesses' testimonies were "indisputably false," *Byrd*, 209 F.3d at 817-18, or that the prosecutor knew of any such falsity, he is not entitled to habeas relief on this claim.

    2.    *Prejudicial Comments and Evidence*

                a.  *Legal Standard*

    For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id*. (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In reviewing whether a prosecutor

27

has deprived a defendant of a fair trial, a court may not consider the prosecutor's conduct in isolation, but must judge the conduct in the context of the entire proceedings. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even where, as here, AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

### b. Analysis

Petitioner contends that the prosecutor committed misconduct by referring repeatedly to petitioner's "scheme." This was fair argument. The evidence presented by the prosecution suggested a plan by petitioner to purchase life insurance policies on Jones and collect on those policies by murdering Jones. The prosecutor's characterization of this plan as a "scheme" was supported by the evidence introduced at trial, and thus was a permissible argument for the prosecutor to make. *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence). Further, even if the prosecutor's use of the word "scheme" was improper, the comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial. *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"). "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see

[the defendant] with no face, blown away by a shotgun.")).

Petitioner also contends that the prosecutor committed misconduct by introducing Redding's testimony regarding his prior bad acts. As explained below, however, this evidence was properly admitted as a matter of state law. A prosecutor does not commit misconduct by introducing admissible evidence or commenting on evidence admitted in the course of the trial during argument. *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Hammond v. Michigan Parole Bd.*, No. 04-73385, 2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006) (Roberts, J., adopting Recommendation of Komives, M.J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

I.      *Evidentiary Rulings (Claim V)*

As part of his fifth claim, petitioner also argues that he was denied a fair trial by the introduction of prior bad acts testimony, specifically, Redding's testimony that he and petitioner had previously attempted insurance scams and that he believed petitioner would kill him to collect insurance proceeds. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483,

29

487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

As specifically relevant here, both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001). Here, the Michigan Court of Appeals, addressing petitioner's related ineffective assistance of counsel claim, reasonably concluded that Redding's testimony was relevant and admissible under Rule 404(b) because "Redding's testimony that defendant had convinced him to designate defendant, a relative stranger, as a beneficiary suggests that defendant

30

had previously engaged in a very similar plan, scheme, or system used to commit offenses in the instant case," and thus "was relevant to establish defendant's intent to obtain Jones' life insurance proceeds." *St. Ann*, 2010 WL 4485910, at *5. Because this evidence was relevant, petitioner cannot show that its admission at trial deprived him of a fair trial.

J.    *Biased Judge (Claim V)*

Petitioner also asserts as part of his fifth claim that the trial judge was biased against him. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id.* (internal

quotation omitted).  The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties.  *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).  As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988).  For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555.  Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune."  *Id*. at 556.  Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias.  *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

As noted above, to require recusal, "the judge's prejudice or bias must be personal or extrajudicial."  *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)).  "'Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.'"  *Id*. (quoting

*Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003). Petitioner does not point to any personal bias against petitioner derived from any extrajudicial source. Rather, he complains only of various decisions made by the trial judge in reinstituting the charges or in conducting the trial. Regardless of whether these judicial rulings were correct or not, as noted above "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Because petitioner has failed to point to any thing in the record suggesting that the trial judge had a personal bias against him stemming from an extrajudicial source, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.     *Ineffective Assistance of Counsel (Claim VI)*

Finally, petitioner raises several claims of ineffective assistance of both trial and appellate counsel. Specifically, he contends that trial counsel was ineffective for failing to: (1) object to the other acts evidence; (2) object to the court's jury instructions; and (3) file an interlocutory appeal challenging the circuit court's reinstatement of the murder and felony-firearm charges. He contends that appellate counsel was ineffective for: (1) not seeking oral argument; (2) admitting that petitioner was involved in an insurance fraud scheme; and (3) not raising on direct appeal the claims raised in his motion for relief from judgment, particularly his bind-over and ineffective assistance of trial counsel claims. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

33

Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and

forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

a. *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to object to Redding's other acts testimony.  The Michigan Court of Appeals rejected this claim, concluding that the evidence was properly admitted, and thus that any objection would have been futile.  *See St. Ann*, 2010 WL 4485910, at *5-*6.  This determination was reasonable.  In rejecting petitioner's claim, the court of appeals concluded that Redding's testimony was properly admitted under Rules 404(b) and 403. These "determination[s] of state law by a state appellate court [are] . . . binding in a federal habeas action."  *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007); *see also*, *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law."). Thus, in analyzing petitioner's ineffective assistance claim, the Michigan Court of Appeals's conclusion that the evidence was properly admitted is binding on this Court. *See Narlock v. Hofbauer*, 118 Fed. Appx. 34, 34 (6th Cir. 2004) (per curiam); *Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). Because the evidence was properly admitted as a matter of state law, any objection to Redding's testimony would have been futile. It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Thus, petitioner is not entitled to habeas relief on this claim.

Likewise, petitioner is not entitled to habeas relief based on counsel's failure to object to the jury instructions. As explained above, the jury instructions did not shift the burden of proof and properly instructed the jury on the factors it should consider in weighing petitioner's statements to the police. Counsel cannot be deemed ineffective for failing to object to jury instructions which were proper under state law. Finally, petitioner cannot show that counsel was ineffective for failing to file an interlocutory appeal following the circuit court's reinstatement of the murder and felony-firearm charges. As explained above, there was adequate probable cause to support the charges against petitioner. Thus, petitioner cannot show a reasonably probability that the charges would have been quashed had counsel filed an interlocutory appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel

36

claims.

### b. Appellate Counsel

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, each of the claims that petitioner contends counsel should have raised on direct appeal are without merit. Because these claims are meritless, petitioner cannot show that his claims were clearly stronger than the claims raised by counsel on appeal, nor can he show that he was prejudiced by counsel's failure to raise the claims on direct appeal.

Petitioner likewise cannot show that counsel was ineffective for failing to secure oral argument. Petitioner cannot show that counsel performed deficiently. "If counsel was satisfied that the case was adequately presented in the briefs and record and that the decisional process would not have been significantly aided by oral argument, counsel was not obligated to request oral argument." *Socorro v. Thurman*, No. C-94-1407, 1995 WL 125429, at *4 (N.D. Cal. Mar. 17, 1995), *aff'd*, 67 F.3d 308 (9th Cir. 1995) (unpublished); *see also*, *Cox v. Ebert*, No. , 2007 WL 2948160, at *23

(S.D.N.Y. Oct. 10, 2007) (internal quotation omitted) ("[T]he failure to request argument on claims that counsel had already fully briefed in his papers does not fall outside the wide range of reasonable professional assistance set forth in *Strickland*.").  Further, petitioner has offered no basis on which to conclude that he was prejudiced by the absence of oral argument; that is, he provides no explanation for how oral argument would have created a reasonably probability that his claims would have succeeded on appeal. *See Willis v. Province*, No. CIV-10-776, 2011 WL 666278, at *9 (Jan. 18, 2011), *magistrate judge's report and recommendation adopted*, 2011 WL 666311 (W.D. Okla. Feb. 14, 2011); *Ouellette v. McKee*, No. 5:05-cv-89, 2008 WL 4376374, at *19 (W.D. Mich. Sept. 22, 2008).  In short, "[t]he decision whether to request oral argument on appeal is a tactical one, and the petitioner does not explain how such failure prejudiced him." *Kitchen v. Ballard*, No. 2:10-cv-01264, 2011 WL 4528461, at *8 (S.D. W. Va. Sept. 28, 2011); *cf. Davis v. Burt*, 100 Fed. Appx. 340, 346 (6th Cir. 2004).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Finally, petitioner contends that appellate counsel was ineffective for admitting his guilt, more specifically, by admitting that petitioner was involved in some sort of insurance fraud scheme. This claim is without merit.  In resolving petitioner's sufficiency of the evidence claim, the court of appeals noted that "[o]n appeal, [petitioner] even admits to being 'involved in an insurance fraud scheme which involved [Jones]." *St. Ann*, 2010 WL 4485910, at *4 (final alteration in original). Contrary to this statement, counsel did not "admit" petitioner's guilt to any offense in his brief.  In arguing that the evidence was sufficient, counsel noted that "[t]he testimony presented at trial, similar to that presented at the preliminary examination, was that the defendant had been involved in an insurance fraud scheme which involved deceased." Def.-Appellant's Br. on Appeal, in *People v. St. Ann*, No. 294569 (Mich. Ct. App.), at 19.  This merely acknowledged what was obviously true,

38

that the prosecutor had presented evidence at trial which, if believed by the jury, could establish that petitioner and Jones had engaged in an insurance fraud scheme.  The statement did not actually admit that petitioner had, in fact, engaged in such a scheme.  And in any event, the statement was made as a part of counsel's reasonably crafted argument that, notwithstanding evidence reflecting petitioner's role in the alleged insurance scheme, there was no evidence that tied him to the murder of Jones.   This was a reasonable argument to make.  Further, petitioner cannot show how this statement prejudiced him.  Petitioner did not challenge on appeal the sufficiency of the evidence relating to the uttering and publishing charges, and he does not contend that counsel was ineffective for failing to raise such a claim.  And, as the court of appeals observed, notwithstanding counsel's statement in the brief "there was clear evidence that defendant knew of the life insurance policies," and "[t]he prosecution presented a myriad of connections between defendant and the life insurance policies." *St. Ann*, 2010 WL 4485910, at *4.  Thus, petitioner cannot show that appellate counsel was ineffective, and he is not entitled to habeas relief on this claim.

L.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

39

*v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

40

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  It is clear that petitioner's challenge to the circuit court's reinstatement of the murder and felony-firearm charges is not cognizable on habeas review, and that in any event there was sufficient evidence to establish probable cause for these charges.  Thus, the resolution of petitioner's first claim is not reasonably debatable.  Likewise, the significant evidence of petitioner's motive, opportunity, and false exculpatory statements provided sufficient evidence to prove his guilt beyond a reasonable doubt, and thus the resolution of this claim is not reasonably debatable.  Because the jury instructions did not impermissibly shift the burden of proof, and because the record belies petitioner's claim that a thirteenth juror participated in deliberations, the resolution of petitioner's jury claims is not reasonably debatable.  As explained above, petitioner has failed to show that any prosecution witness committed perjury, or that the prosecutor made any prejudicially improper remarks, and thus the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable.  Because petitioner's challenge to the other acts evidence is not cognizable on habeas review, the resolution of this claim is not reasonably debatable.  With respect to petitioner's judicial bias claim, as explained above petitioner has failed to point to any personal bias on the part of the trial judge stemming from an extrajudicial source.  Thus, the resolution of this claim is not reasonably debatable.  Finally, the resolution of petitioner's ineffective assistance claims is not reasonably debatable, for the reasons explained above.  Accordingly, the Court should deny petitioner a certificate of appealability.

M.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

41

petitioner's claims that were adjudicated on the merits in the state courts did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law, and that petitioner's claims that were not adjudicated on the merits in the state courts fail to establish a constitutional violation. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 6, 2014                    s/ Paul J. Komives
                                      PAUL J. KOMIVES
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 6, 2014, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Paul J. Komives

43